# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 13-1103


**NELLIE PIERCE, ET AL.**

**VERSUS**

**ATLANTIC RICHFIELD COMPANY, ET AL.**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 88702
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**JOHN E. CONERY**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of J. David Painter, Phyllis M. Keaty, and John E. Conery, Judges.


**CHEVRON'S MOTION TO STRIKE GRANTED; PLAINTIFFS' MOTION TO STRIKE RENDERED MOOT; PLAINTIFFS' REQUEST TO SUPPLEMENT THE RECORD ON APPEAL DENIED; MAY 2, 2013 AND MAY 8, 2013 JUDGMENTS AFFIRMED.**

**Warren A. Perrin**
**Perrin, Landry, deLaunay, Dartez & Ouellet**
**251 La Rue France**
**Lafayette, Louisiana  70508**
**(337) 237-8500**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
  **Nellie Pierce**
  **Russie Tiller**
  **David Pierce**
  **Pierce Enterprises, Inc.**

**Stuart H. Smith**
**Michael G. Stag**
**Sean S. Cassidy**
**John Leonard Fontenot, Jr.**
**Smith Stag, LLC**
**365 Canal Street, Suite 2850**
**New Orleans, Louisiana 70130**
**(504) 593-9600**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
  **Nellie Pierce**
  **Russie Tiller**
  **David Pierce**
  **Pierce Enterprises, Inc.**

**Ralph Shelton Hubbard, III**
**Céleste D. Elliot**
**Rachel A. Clark**
**Anne E. Briard**
**601 Poydras Street, Suite 2775**
**New Orleans, Louisiana  70130**
**(504) 568-1990**
**COUNSEL FOR DEFENDANT/APPELLEE:**
  **United States Fidelity & Guaranty Company**

**Michael E. Parker**
**Allen & Gooch**
**Post Office Box 81129**
**Lafayette, Louisiana  70598-1129**
**(337) 291-1350**
**COUNSEL FOR DEFENDANT/APPELLEE:**
  **United States Fire Insuarance Company**

John K. Nieset
James A. Holmes
P. Ryan Plummer
Christovich & Kearney, LLP
601 Poydras Street, Suite 2300
New Orleans, Louisiana 70130
(504) 561-5700
COUNSEL FOR DEFENDANT/APPELLEE:
Hartford Accident & Indemnity Co.

George B. Hall, Jr.
Katie W. Myers
Phelps Dunbar LLP
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
(504) 566-1311
COUNSEL FOR DEFENDANT/APPELLEE:
Great American Insurance Company of New York

Paul J. Hebert
William H. L. Kaufman
Valerie V. Guidry
Ottinger Hebert, LLC
Post Office Drawer 52606
Lafayette, Louisiana 70505-2606
(337) 232-2606
COUNSEL FOR DEFENDANT/APPELLEE:
Henry Production Co., Inc.

Michael R. Phillips
Louis M. Grossman
Brittany B. Salup
Shannon A. Shelton
Kean Miller LLP
909 Poydras Street, Suite 3600
New Orleans, Louisiana 70112
(504) 585-3050
COUNSEL FOR DEFENDANT/APPELLEE:
Chevron U.S.A. Inc.

**Carl D. Rosenblum**
**Alida C. Hainkel**
**Lauren C. Mastio**
**Jones Walker LLP**
**201 St. Charles Avenue, 49th Floor**
**New Orleans, Louisiana 70170**
**(504) 582-8296**
**COUNSEL FOR DEFENDANT/AMICUS BRIEF IN SUPPORT OF TRIAL COURT'S RULING:**
    **McMoRan Exploration Company**

**CONERY, Judge.**

Nellie Marceaux Pierce ("Mrs. Pierce"), Russie Tiller Pierce and David Pierce, collectively the "Pierce Children", and Pierce Enterprises, Inc. ("Pierce Enterprises"), collectively the "Pierce Plaintiffs," appeal the trial court's May 2, 2013 judgment granting United States Fidelity & Guaranty Company ("USF&G"), Hartford Accident & Indemnity Company ("Hartford"), Great American Insurance Company of New York, f/k/a American National Fire Insurance Company ("Great American"), and United States Fire Insurance Company's ("US Fire"), collectively the "Insurer Defendants," exceptions of no right of action dismissing the entirety of the Pierce Plaintiffs' case against the named defendants.

The Pierce Plaintiffs also appeal the trial court's separate May 8, 2013 judgment which also granted, for the same reasons, the exception of no right of action filed on behalf of Henry Production Company, Inc. ("Henry"), and adopted by Chevron U.S.A., Inc.[1] ("Chevron"), and also dismissed the Pierce Plaintiffs' claims against Henry and Chevron with prejudice. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

The Pierce Plaintiffs originally filed suit on May 29, 2009. The original petition was followed by three supplemental and amending petitions, the last of which was filed on January 27, 2012. The Pierce Plaintiffs claimed that their land in Vermilion Parish was contaminated by a number of defendants in a variety of ways, which were all related to actions or inactions connected to oil and gas

---

[1] Chevron filed a number of exceptions which included the dilatory exceptions of improper cumulation, vagueness and ambiguity, as well as the peremptory exception of no cause of action for depositor/depositary liability, punitive damages, and fraud. Out of an abundance of caution, Chevron also adopted the exceptions filed by the other defendants which included the peremptory exception of no right of action that is the subject of this appeal.

operations. The allegations in the Pierce Plaintiffs' petitions involved three areas of the property. To attempt to avoid confusion, the three areas of property are referred to in the Pierce Plaintiffs' "Second Supplemental and Restated Petition" as "(1) the Larry Landry dump ("the waste dump site"); (2) the ARCO production area; and (3) the Southland pipeyard.[2]"

The Pierce Plaintiffs specifically alleged that defendant, Home Industry Disposal Company, Inc. ("HIDCO"), was responsible for damage to the Larry Landry dump, hereinafter referred to as the waste dump site. In the mid-1970s, HIDCO began operating on the waste dump site pursuant to a verbal agreement with the longtime owner, Mr. Casey Pierce ("Mr. Pierce"). Mr. Pierce, ancestor in title to the Pierce Children, acquired the property at issue through a credit deed in 1944. HIDCO began using the site for disposing of domestic waste, but ultimately began to also dispose of waste related to oil and gas operations. It is undisputed that HIDCO ceased operations at the waste dump site in 1979.

After Mr. Pierce passed away in 1998, a "Judgment of Possession" was signed on August 19, 1998, giving ownership of the waste dump site to the Pierce Children only.[3] On February 24, 2011, the Pierce Children sold the waste dump site to HIDCO via "Cash Sale." Plaintiffs' counsel maintained at oral argument that the "Cash Sale" document reserved the Pierce Children's claim for property damage against potential insurers of HIDCO. However, no reservation of rights is contained within the four corners of the February 24, 2011 "Cash Sale" document.

---

[2] The Pierce Plaintiffs have settled their claims with Atlantic Richfield ("ARCO"), which is the defendant who allegedly contaminated the area designated as "the ARCO Production area." ARCO has been dismissed from the lawsuit.

[3] It is undisputed that neither Mrs. Nellie Marceaux Pierce nor Pierce Enterprises inherited or owned any of the property that is the subject of this lawsuit. The only plaintiffs who have an interest in the property are the Pierce Children, Russie Tiller Pierce, and David Pierce. The judgments in question and the appeal, however, were taken on behalf of all "Pierce Plaintiffs."

HIDCO remains a defendant in the lawsuit despite what has been termed by counsel for the Pierce Plaintiffs as a "Compromise Receipt and Release Agreement" ("Agreement") between the Pierce Plaintiffs and HIDCO. According to counsel for the Pierce Plaintiffs, the terms of the Agreement purport to specifically reserve the Pierce Plaintiffs' rights against HIDCO and its insurers, in this case the Insurer Defendants, "with respect to any and all *insured* actions and inactions."

The Pierce Plaintiffs, subsequent to oral argument before this court, requested that the Agreement be submitted into the record on appeal. The Pierce Plaintiffs admitted in their briefing in support of the request that the Agreement was not admitted into evidence at the hearing before the trial court. This court's review of the transcript of the hearing held by the trial court on April 8, 2013, also confirmed that the Agreement was not admitted into evidence. Therefore, the Pierce Plaintiffs' request to supplement the record with the Agreement is denied by this court as "[a]ppellate courts are courts of record and may not review evidence that is not in the appellate record, or receive new evidence." *Denoux v. Vessel Mgmt. Servs., Inc.,* 07-2143, p. 6 (La. 5/21/08), 983 So.2d 84, 88.

In their "Third Supplemental and Amending Petition for Damages" ("Third Petition") filed on January 27, 2012, the Pierce Plaintiffs named for the first time the Insurer Defendants, HIDCO's named insurers. The claims against the Insurer Defendants were based on the Louisiana Direct Action Statute and alleged that the Insurer Defendants were responsible for the actions and inactions of HIDCO involving the waste dump site. In response to the Pierce Plaintiffs' claims, the Insurer Defendants filed peremptory exceptions of no right of action.

The Pierce Plaintiffs' Third Petition also named, in addition to the Insurer Defendants, Henry, Chevron, and McMoRan Exploration Company ("McMoRan"), alleging that they were responsible for contributing to contamination at the "the Southland pipeyard." In response to the Pierce Plaintiffs' claims, Henry also filed a peremptory exception of no right of action and adopted all exceptions made by other similarly situated defendants.[4]

In response, Chevron also filed a number of exceptions, which included the dilatory exceptions of improper cumulation, vagueness and ambiguity, as well as the peremptory exception of no cause of action for depositor/depositary liability, punitive damages, and fraud. Chevron also adopted the exceptions filed by the other defendants, including the peremptory exception of no right of action filed by Henry which is the subject of this appeal.

On April 8, 2013, the trial court heard oral argument only on the peremptory exceptions of no right of action. The trial court ruled from the bench and sustained the exceptions filed by the Insurer Defendants, Henry, and Chevron and dismissed the Pierce Plaintiffs' lawsuit in its entirety as against these defendants. The transcript of the hearing shows that no extensive oral reasons for ruling were assigned nor were subsequent written reasons filed. The trial court relied on the subsequent purchaser doctrine as set forth in the supreme court's decision in *Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*, 10-2267, 10-2272, 10-2275, 10-2279, 10-2289 (La. 10/25/11), 79 So.3d 246. In that case, the supreme court held that a landowner's right to sue an alleged tortfeasor for damage to a real right in property

---

[4] McMoRan was named as a defendant in the Pierce Plaintiffs' Third Petition but had not filed pleadings in response to the Pierce Plaintiffs' petition. Although this appeal does not include McMoRan, McMoRan has filed a brief in support of the trial court's judgments which we will characterize as an amicus brief.

is a personal right, and in the absence of a specific assignment or subrogation of this right, "a subsequent purchaser of the property cannot recover from a third party for property damage inflicted prior to the sale." *Id*. at 279. The minutes of the hearing do not reflect that Chevron's plethora of exceptions was heard by the trial court, and no oral argument was heard on Chevron's exceptions other than the exception of no right of action which Henry filed and Chevron adopted.

The ruling by the trial court dismissing the Pierce Plaintiffs' lawsuit by granting the exceptions of no right of action was memorialized in two separate judgments. The first was signed by the trial court on May 2, 2013, dismissing the Pierce Plaintiffs' claims against the Insurer Defendants. The second judgment was signed by the trial court on May 8, 2013, dismissing with prejudice the Pierce Plaintiffs' claims against Chevron and Henry. The trial court specifically mentioned in the May 8, 2013 judgment that the dismissal of Henry and Chevron was based on its previous judgment of May 2, 2013, which granted the Insurer Defendants' exceptions of no right of action based on the subsequent purchaser doctrine articulated in *Eagle Pipe*.

The Pierce Plaintiffs' have timely appealed, urging error in the trial court's finding that they have no right of action for the alleged contamination of the sites at issue. The Pierce Plaintiffs have also assigned errors for all of Chevron's additional exceptions, including Chevron's dilatory exceptions and peremptory exception of no cause of action. In response, Chevron has filed a "Partial Motion to Dismiss Appeal" as to those exceptions.

### *Preliminary Matters*

In order to define this court's jurisdiction on appeal, it is necessary to first address Chevron's "Partial Motion To Dismiss Appeal." Chevron seeks to dismiss

the portions of the Pierce Plaintiffs' appeal which address the additional exceptions filed on behalf of Chevron, including the dilatory exceptions of improper cumulation, vagueness and ambiguity, as well as the peremptory exception of no cause of action for depositor/depositary liability, punitive damages, and fraud. As previously indicated, Chevron did not file a separate exception of no right of action based on the subsequent purchaser doctrine but did adopt the exceptions filed by Henry. Both Chevron and Henry adopted the arguments of the Insurer Defendants on this issue.

Chevron argues, and we agree, that the trial court's judgments of both May 2, 2013, and May 8, 2013, specifically only grant on behalf of the Insurer Defendants as well as Henry and Chevron, their exceptions of no right of action. The trial court discussed on the record at the hearing held on April 8, 2013, the other exceptions before the court and expressed its intention to "dispose of all of them." However the court minutes of the April 8, 2013 hearing reflect that Chevron's exceptions were not set for hearing, there was no oral argument presented by counsel on the additional exceptions, and no specific oral reasons were given by the trial court as a basis to grant Chevron's additional exceptions. There was no signed final judgment disposing of Chevron's additional exceptions.

This court's jurisdiction is limited to an appeal from a signed final judgment. Louisiana Code of Civil Procedure Article 1911 codifies this requirement and states, "Except as otherwise provided by law, every final judgment shall be signed by the judge. For the purpose of an appeal as provided by Article 2083, no appeal may be taken from a final judgment until the requirement of this Article has been fulfilled." Oral statements made by the trial judge, although included in the

6

transcript and memorialized in the minutes of the court, form no part of the judgment in the case. *J. L. Philips & Co., Inc. v. Barber*, 91 So. 293 (La.1922).

Therefore this court's review is limited to only the Pierce Plaintiffs' appeal seeking reversal of the trial court's ruling granting the defendants' exceptions of no right of action. Chevron's "Partial Motion To Dismiss Appeal" as to its additional exceptions is GRANTED.

The Pierce Plaintiffs also filed a "Motion To Strike Appellees' Contention That Appellants' Underlying Claims Are Barred by Prescription and/or Peremption," ("Motion to Strike"). That motion is rendered moot for reasons stated in the portion of this opinion affirming the May 2, 2013 and May 8, 2013 judgments of the trial court granting the exceptions of no right of action and dismissing the Pierce Plaintiffs' suit as to the named defendants.[5]

## ASSIGNMENT OF ERROR

The district court erred by sustaining the insurance company Defendants' peremptory exceptions of no right of action. [6]

## LAW AND DISCUSSION

*Standard of Review*

The Louisiana Supreme Court addressed appellate review of the exception of no right of action in *Eagle Pipe* stating:

> By filing a peremptory exception of no right of action, a defendant challenges whether a plaintiff has such a real and actual interest in the action. La. C.C.P. art. 927(A)(6). At the hearing on the exception of

---

[5] Again, McMoRan did not file an exception of no right of action, was not dismissed by either the May 2 or May 8, 2013 judgments of the trial court, and is not party on appeal.

[6] The Pierce Plaintiffs did not assign error for the exceptions of no right of action filed by defendants Henry and Chevron, which is contained in the May, 8, 2013 judgment. However they have specifically appealed that judgment, and thus, we will consider the arguments made by the Pierce Plaintiffs applicable to all defendants for which the peremptory exception of no right of action was granted by the trial court.

no right of action, the exception may be submitted on the pleadings, or evidence may be introduced either in support of or to controvert the objection raised when the grounds thereof do not appear from the petition. La. C.C.P. art. 931.

"The function of the exception of no right of action is to determine whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit." *Hood v. Cotter,* 2008–0215, p. 17 (La.12/2/08), 5 So.3d 819, 829. An appellate court reviewing a lower court's ruling on an exception of no right of action should focus on whether the particular plaintiff has a right to bring the suit and is a member of the class of persons that has a legal interest in the subject matter of the litigation, assuming the petition states a valid cause of action for some person. *Id.; Badeaux v. Southwest Computer Bureau, Inc.,* 2005–0612, p. 6–7 (La.3/17/06), 929 So.2d 1211, 1217; *Turner v. Busby,* 2003–3444, p. 4 (La.9/9/04), 883 So.2d 412, 415–416; *Reese v. State, Dept. of Public Safety and Corrections,* 2003–1615, p. 3 (La.2/20/04), 866 So.2d 244, 246.

*Eagle Pipe*, 79 So.3d at 255-56 (footnotes omitted).

The determination of whether a plaintiff has a right to bring an action raises a question of law. A question of law requires *de novo* review. *Holly & Smith Architects, Inc. v. St. Helena Congregate Facility, Inc.,* 06-582 (La. 11/29/06), 943 So.2d 1037.

***The May 2, 2013 Judgment Granting the Insurer Defendants' Exceptions of No Right of Action***

At the close of the hearing on April 8, 2013, the trial court applied the holding of the supreme court in *Eagle Pipe*, as urged by all defendants, that subsequent owners of a piece of property do not have a right to sue for past contamination of the property occurring before they acquired ownership, unless there is a specific reservation or subrogation of those rights. In pertinent part, the supreme court in *Eagle Pipe* held:

8

As we have explained, injury to property must be understood as damage to the real rights in the property. A tortfeasor who causes injury or damage to a real right in property owes an obligation to the owner of the real right. This relationship arises as a matter of law and provides to the owner of the real right a personal right to sue the tortfeasor for damages. In the absence of an assignment or subrogation of this personal right, a subsequent purchaser of the property cannot recover from a third party for property damage inflicted prior to the sale. Insofar as Eagle Pipe claims a right to sue based on the damage to the property which occurred before its ownership, we hold the plaintiff has no right of action to assert as a matter of law.

*Eagle Pipe*, 79 So.3d at 279.

The trial court stated on the record that it did not agree with the Pierce Plaintiffs' argument that *Eagle Pipe* did not apply to property inherited by the Pierce Children, which they subsequently sold to HIDCO and which allegedly had been insured by the four Insurer Defendants. The trial court then granted the Insurer Defendants' peremptory exceptions of no right of action, dismissing the Pierce Plaintiffs' claims against all four Insurer Defendants of HIDCO for the alleged pollution of the property at issue, the waste dump site, which had allegedly occurred from the mid-1970s until 1979. The trial court's decision is memorialized in its May 2, 2013 judgment.

It is undisputed that neither Mrs. Pierce nor Pierce Enterprises have any ownership interest in any of the property at issue before the court. In their briefing to this court, the Pierce Plaintiffs conceded that oral argument before the trial court was focused on the Pierce Children and their right of action to sue for contamination of property inherited from their father, Mr. Pierce, documented in the "Judgment of Possession" dated August 19, 1998. Thus, the issue for review as urged by the Pierce Plaintiffs is: "Whether universal legatees of a deceased

landowner inherited a valid right of action to bring claims for property damage discovered after the original landowner's death."

The Pierce Children no longer own the waste dump site for which they seek damages. On February 24, 2011, the Pierce Children sold the waste dump site to HIDCO, who had allegedly placed contaminated oilfield waste at the waste dump site prior to 1979. In the "Cash Sale" document, HIDCO agreed to waive its rights regarding any vice or defect of the waste dump site and to defend, indemnify, and hold the Pierce Children "harmless from any and all future liability associated with the environmental condition of the property."

The record also reflects that subsequent to the "Cash Sale" of the property by the Pierce Children to HIDCO, the Third Petition was filed by the Pierce Plaintiffs on January 27, 2012, naming the Insurer Defendants pursuant to the Louisiana Direct Action Statute, La.R.S. 22:1269 (B). The Pierce Plaintiffs' Third Petition alleged that the Insurer Defendants were responsible for the actions and inactions of HIDCO involving the contamination of the waste dump site.

In the recent case of *Soileau v. Smith True Value and Rental*, 12-1711, pp. 4-5 (La. 6/28/13), ___ So.3d ___, ___, the Louisiana Supreme Court was presented with a factually and procedurally similar case and summarized the basis of the Pierce Plaintiffs' claims against the Insurer Defendants in cases involving the Direct Action Statute, stating:

> The Direct Action Statute grants a procedural right of action against an insurer where the plaintiff has a substantive cause of action against the insured. The Direct Action Statute was enacted to give special rights to tort victims. In the absence of the Direct Action Statute, a plaintiff would have no right of action against an alleged tortfeasor's liability insurer because the obligation between the plaintiff and the alleged tortfeasor is delictual in nature, and the

10

plaintiff has no contractual relationship with the tortfeasor's insurer. Because the Direct Action Statute provides the sole procedural right of action against the insurer in this case, the Direct Action Statute provides the rules regulating the subject. *Descant v. Administrators of Tulane Educational Fund*, 93–3098 (La.7/5/94), 639 So.2d 246, 249.

(Other citations omitted.)

In their briefing to this court, the Pierce Plaintiffs contended that HIDCO remains a defendant in this case by virtue of a document previously referred to as the Agreement. The Agreement was not submitted into evidence at the hearing before the trial court on April 8, 2013, and thus is not in the record on appeal. As previously stated, this court denied the Pierce Plaintiffs' request to supplement the record with the Agreement.

Our *de novo* review of the existing record leads us to conclude that at the time of the "Cash Sale" by the Pierce Children to HIDCO on February 24, 2011, the obligation of the Insurer Defendants to HIDCO was extinguished by confusion pursuant to La.Civ.Code art. 1903.

Louisiana Civil Code Article 1903 provides, "When the qualities of the obligee and obligor are united in the same person, the obligation is extinguished by confusion." The Pierce Plaintiffs' Third Petition, filed on January 27, 2012, after the "Cash Sale" on February 24, 2011, alleged that the Insurer Defendants were responsible for damages caused by the "actions and inactions" of its insured HIDCO. The Third Petition claimed that HIDCO's "actions or inactions" contributed to the contamination of the waste dump site and claimed that under the Direct Action Statute, the Insurer Defendants were liable for the "actions or inactions" of their insured HIDCO as a tortfeasor/obligor.

11

However by virtue of the "Cash Sale," HIDCO became the owner of the waste dump site and thus the beneficiary/obligee. Therefore, should HIDCO be found liable for polluting the waste dump site due to its "actions and inactions" in depositing oil field waste at the site, it would be both the tortfeasor and beneficiary of any damages owed for damage to the property as its owner. Any claim for damages for the waste dump site became "united in the same person" by operation of law at the time of the "Cash Sale" on February 24, 2011, in this case the corporate entity, HIDCO.

As previously stated, the Pierce Children's only right of action against the Insurer Defendants is based on the Direct Action Statute. Therefore, when the Third Petition was filed by the Pierce Plaintiffs on January 27, 2012, they had no right of action against HIDCO for contamination of the waste dump site. The "Cash Sale" on February 24, 2011, to HIDCO extinguished by confusion their right to any damages for HIDCO's alleged contamination. The sale further obligated HIDCO to hold the Pierce Plaintiffs harmless from any damages caused by contamination and any costs associated with environmental cleanup.

As a result of the application of the law of confusion, the Pierce Plaintiffs relinquished their right of action against the Insurer Defendants for any claims pursuant to the Direct Action Statute. "When the injured party's substantive cause of action against the original tortfeasor is extinguished, the procedural right of direct action against the insurer, which is purely remedial and ancillary to the cause, must fall by operation of law." *Marsh Eng'g Inc. v. Parker*, 04-509, p.11 (La.App. 3 Cir. 9/29/04), 883 So.2d 1119, 1127, *writ denied*, 04-2669 (La. 1/28/05), 893 So.2d 73.

Moreover, for the reasons we discussed infra, the *Eagle Pipe* rationale applies to the claims of the Pierce Children. Since there is no reservation of rights in the "Judgment of Possession" by which the Pierce Children obtained ownership of the property, they have no right under the law to assert a personal right based on alleged damage to property which allegedly occurred before their ownership. For all these reasons, we affirm the trial court's granting of the Insurer Defendants' exceptions of no right of action.

### *The May 8, 2013 Judgment Granting Henry and Chevron's Exceptions of No Right of Action*

As to Chevron and Henry, the Pierce Plaintiffs' claims arise out of alleged contamination of a different tract of land from the waste dump site now owned by HIDCO. The Chevron/Henry site is called the "the Southland pipeyard." The Pierce Plaintiffs claim Chevron and Henry contributed to the contamination of the land at that site.

The trial court granted Henry's, and by adoption Chevron's, exceptions of no right of action and dismissed the Pierce Children's claims against both, relying on the rule of law set forth by the supreme court in *Eagle Pipe*. The 1998 "Judgment of Possession" through which the Pierce Children acquired the property from their ancestor in title, Mr. Pierce, contains no specific assignment or subrogation of a personal action to the Pierce Children to bring a property damage claim related to the properties. Absent such an assignment, the Pierce Children have no right of action to bring such a claim. *Eagle Pipe*, 79 So.3d. 246. Moreover, neither Mrs. Pierce nor Pierce Enterprises ever acquired ownership of the subject property and likewise have no right to sue for damages to property they did not own.

13

We agree with the trial court's reliance on the holding of *Eagle Pipe*. Therefore, the May 8, 2013 judgment granting the exceptions of no right of action of Henry and Chevron and dismissing them with prejudice is affirmed.

## CONCLUSION

For the foregoing reasons, we grant Chevron's "Partial Motion to Dismiss Appeal" and dismiss the appeal of Chevron's dilatory exceptions of improper cumulation, vagueness and ambiguity, as well as the peremptory exception of no cause of action for depositor/depositary liability, punitive damages, and fraud. We deny the Pierce Children's request to supplement the record on appeal with the "Compromise Receipt and Release Agreement." The Pierce Plaintiffs' "Motion To Strike Appellees' Contention That Appellants' Underlying Claims Are Barred by Prescription and/or Peremption" is rendered moot. The trial court's judgment dated May 2, 2013, granting the exceptions of no right of action and dismissing the Insurer Defendants, United States Fidelity & Guaranty Company, Hartford Accident & Indemnity Company, Great American Insurance Company of New York, f/k/a American National Fire Insurance Company, and United States Fire Insurance Company, is affirmed. The trial court's judgment dated May 8, 2013, granting the exceptions of no right of action and dismissing Henry Production Company, Inc. and Chevron U.S.A., Inc., is affirmed. Costs of this appeal are assessed against Nellie Marceaux Pierce, Russie Tiller Pierce, David Pierce, and Pierce Enterprises, Inc.

**CHEVRON'S MOTION TO STRIKE GRANTED; PLAINTIFFS' MOTION TO STRIKE RENDERED MOOT; PLAINTIFFS' REQUEST TO SUPPLEMENT THE RECORD ON APPEAL DENIED; MAY 2, 2013 AND MAY 8, 2013 JUDGMENTS AFFIRMED.**